We'll hear Slaughter-Payne v. Peek. Good morning, Your Honors. My name is Ross Waters-Patterson. I represent Elizabeth Slaughter-Payne, and Elizabeth Slaughter-Payne is present today in court. The case before you on appeal is an issue of a discrimination case that, through summary judgment, the district court determined that Ms. Payne, Elizabeth Slaughter-Payne, was not qualified for the position. Can you address the jurisdictional issue? I'm having trouble with that, the one that your counsel raises, that you had amended the complaint to add a bad faith spoliation claim, and the district court never ruled on that. So that claim is still live, or at least that's what your opposing counsel says, and it appears to be still live before the district court. How is it that we then have jurisdiction if there's no order that disposes of all of the claims? That's how the second amendment complaint came about. In my motion, when I went for sanctions, there were remedies that I requested. One was the ultimate remedy that we prevailed in the case, and then I went down and gave an alternative remedy, that alternative remedy that I have the right to amend the complaint and bring before the jury the issue of spoliation. What the court ruled for me was that the spoliation at that time was not ripe. So the motion was denied, but he did grant your motion to amend the complaint, and there is a second amended complaint that has this bad faith spoliation claim in it. Yes, there is. And so, and that was never ruled on by the district court. No, it wasn't ruled on because I think my thinking was that because she was saying it wasn't ripe at the time, when she rules that when the district court made the decision that she was not qualified, then the spoliation is not an issue there. Whether it was spoiled or not does not become an issue because she's not qualified for position. But arguably you can go back to the district court and argue that you're entitled to damages or whatever for this bad faith spoliation claim. There's a number of jurisdictions that have that as a stand-alone tort. I don't think Arizona is one of them, but I'm puzzled about what I'm supposed to do with the fact that not all of your claims before the district court have been resolved. It was my impression that when, on my first motion, when she said that it was not ripe, then I felt the district court felt that it never ripened. It wasn't that it wasn't ruled on, it just never became ripe enough for the district court to make a determination. And she felt she gave me my right, and that was to amend the complaint. When you say the district court decided it wasn't ripe, did she dismiss the claim? No. And she gave me the right to amend? No. There was no dismissal. She just gave me a right to amend the complaint. A stand-alone tort? Were you seeking damages for spoliation? Yes, I was. Regardless of whether the state did the wrong thing in not making her a computer specialist? Yes, I was. I'm looking at your complaint. It's kind of long, but I'm not sure I've got it right, but I think what it is is suing for destruction of files and computer records that relate to the computer specialist personnel decision. Is that correct? Yes. It is the 22-page complaint. The 22 computer specialist positions and the other seven human resource management positions. There were seven human resource management positions that were also destroyed. So all of the evidence regarding her qualifications were destroyed. Well, don't we have to say we don't have jurisdiction over your appeal now because there's still an action pending, before the district court and just send it back to the district court to resolve it? Well, I looked at it and I felt that it didn't. My impression was that it did not go to the merits of the case when the district court was making their decision and granting summary judgment. And I think that the district court was in the exact same position when they ruled when I did the separate motion for spoliation and that it just didn't get right. And I think that's what the district court was thinking. It did not make it to the merits of the case, and therefore in making their summary judgment determination, it took care of the spoliation claim. Why? Because the evidence, the evidence that required, the evidence that I'm saying has been destroyed were directly related to her qualifications. The PVA files, the seven separate parts of the PVA file. What the district court did was they went somehow, which is another part of my argument, but they went somehow and made up their own requirements. I think maybe I failed to make clear to you what I meant by a standalone claim. There are some claims that aren't. For example, car accident, husband's injured, husband and wife sued, the wife's claim is for loss of consortium. If he can't establish negligence, proximate cause, duty, injuries, he loses his negligence claim and her loss of consortium claim automatically disappears. It's parasitic on his negligence claim. And what I understand you to have said is that in this state, a destruction of evidence spoliation claim is not parasitic on the discrimination claim. You can sue independently because somebody destroyed evidence and made it harder for you to prove a legal case, even if your legal case had no merit. Is that true? Yes. So it seems like it wouldn't stand or fall on the decision that the merits case failed. The judge could decide, well, they didn't discriminate against her at all. She wasn't qualified to be a computer technician and they didn't make her one. But you could still win because they destroyed evidence that made it harder for you to present your case. Well, I disagree with that. I believe that the destruction has to go to the merits of what I'm arguing about. The destruction has to harm me in some way of my merits in my case. One, qualified. Is she qualified or not? In this situation, the court, without looking at the destroyed evidence, determined that it wasn't right yet. They made a determination that she's not qualified, without even looking at that block of evidence. So I need to now come to the court and say that the destruction went to the merits of the case. I have a ruling that it doesn't. I have a ruling from the district court that it does not. She's not qualified. Have you decided, are you prepared to give up your spoliation claim? No. As a matter of fact, I put it back in my appellate motion because I want it reviewed because I do believe that her determination of qualifications she cannot make and that the only way she can show qualifications is you have to use the documents that were prepared by the Veterans Administration of Phoenix. Well, if you still have a claim pending in the district court on this bad faith issue, why isn't this controlled by that Chacon case, which the State puts in their brief, Chacon v. Babcock, 645-2, where an amended complaint adds a new cause of action and that is still pending in the district court under our jurisdictional statute, we have no jurisdiction. This is not a final judgment. Actually, and the difference in Chacon is that that claim that they bring is totally separate from the issue that they're bringing. I have one of the elements I must prove is that she is qualified. And I think in Chacon's case, it's a different issue. I have to prove qualifications. The spoilation goes directly to a qualification. If the determination that you're not qualified, the merits, that spoilization does not go to the merits of the case. The court is saying she's not qualified on a different set of facts or evidence. I don't understand why that doesn't establish finality. Suppose you were to go to trial, no summary judgment, just go to trial, and you tell the jury at that point, it seems to me, she was qualified. And I'd be able to prove she was qualified, except the State destroyed the files and destroyed the computer records for the relevant time, and that's where the proof of qualification was, and that's a fair inference from the fact that they destroyed it. I think that would be your spoliation claim. And I don't see why it fails because you couldn't prove qualification. Because the court has determined she's not qualified. I would like to go in there to say that I can prove quali- if they would have destroyed this, I could have proved qualification. I have a finding, a rendering, that she's not qualified based on a totally separate fact. So where I am and where I felt that the district court was coming from was that it doesn't go to the merits of the case. The issue is, is she qualified? Some way they were capable of finding not qualified. So the destruction, what she's saying is, it didn't write them. And so I re-urge my motion because I think that the way that they're determining they cannot do. And when the court changes the- On the merits, if we get to the merits, I don't quite understand why she's qualified. It looks like they didn't hire her as the computer person instead because she didn't really have experience or training in computer system and design. Instead, they hired somebody else who did. Why, if we get to the merits, wasn't the district judge right in reaching basically the conclusion I just stated? Because that statement has to either come from an expert or it has to be through lay foundation. And the court is determined that that statement you just read came from an expert opinion. If that is going to come from an expert opinion, then Slaughter Payne has lost her rights. She gets rights under 26. You have to disclose your experts, she gets longer to do a deposition, separate interrogatories, and she gets to report. In this opportunity, Slaughter Payne has already done a motion stating that this person cannot testify as an expert because of the Rule 16 scheduling order. So they totally missed this. The Rule 16 scheduling order said you have to tell us who this person is by a certain date. That was never done. We do a motion. The court says this person will not testify as an expert. They can only testify as a lay person. As a lay person, that information that you're reading right now does not make it under foundation. There are no dates on the documents. First of all, they're not made within the normal course of business. They're outside documents. One comes from a university. The other one comes from Slaughter Payne filling out a piece of paper saying that I would like to apply for the job. The third one comes from Powell sometime in 2003 where he's alleging all sorts of work that he's done. It won't make the proper foundation for a lay witness. It can only come through as an expert. So we can't have it both ways. We can't have the court make an order that he can only be a lay witness, and then at summary judgment stage, the court turn around and say he is an expert. Assuming that we agreed with you and said, okay, there was evidence that she was qualified or that Mr. Ponce's testimony was wrongly admitted, then the employer presents evidence that Mr. Pyle had better qualifications. What was the evidence of pretext there? So they came up with a legitimate, non-discriminatory reason that the person who was hired for that position was better qualified. The problem with the difficulty with pretext in this matter is we're talking about 29 separate cases. Out of 22, of the 22 computer cases, eight of those cases, an unknown person was selected. They don't even know who the person was, they just know it wasn't Elizabeth Slaughter Payne. That being said, that they're not going to be able to come with a legitimate, discriminatory reason for that selection, at least on the eight, the unknowns. Now we have to go through the other 22 cases. So the VA is able to... I didn't understand that. I hire unknown people as law clerks. Sometimes I don't even see them, I just talk to them on the phone, but I read their resumes. So what's relevant to me is known. Why does not knowing them matter? An unknown is, in 1998, I hired a computer specialist technician, June 1998. I don't know who the person is. I don't know their name. I don't know the dates they worked there. I don't know who that person is. It just wasn't Elizabeth Slaughter Payne. That's the VA's answer for eight of the 22 selections. So we have two people that they were able to piece together the information and say, well, one of them, Mr. Powell, we get a piece of paper from 2003, not even related to when he was promoted. And Mr. Potts makes a determination based on that one piece of paper that he was somehow more qualified. So if you were to give them, Mr. Powell, the one, I still have 21 computer specialist positions that they are incapable of giving me a legitimate non-discriminatory reason for selecting someone else. They cannot do it. Thank you, counsel. Thank you. May it please the Court. Good morning, Your Honors. My name is Lon Leavitt. I represent the defendant appellee in this case. The Court should not consider the merits of the appeal because it lacks jurisdiction to do so. Even if it does reach the merits, the Court should affirm that the appellant was not qualified for either of the positions she applied for and failed to show pretext. Could you address that last issue for a moment? If we do reach the merits, it sounds as though the spoliation may hurt you as much as it does the plaintiff, maybe more if you can't prove what the qualifications were and why the other people were hired over her. Your Honor, those positions are not at issue in this case. They were never, the administrative process was never exhaustive to any of those positions. The only two positions that are at issue in this case are the computer specialist position and the human resource management specialist position. As to the other 22 or 30 or however many positions that have been mentioned in the briefing, those are simply not at issue here. There's no jurisdiction. The District Court below lacks jurisdiction to consider those, and this Court also. Okay. So we can ignore those because there's no administrative exhaustion? Yes, Your Honor. Let me ask you, getting back to the jurisdictional issue for a moment, isn't it the case that Arizona doesn't recognize a stand-alone tort of bad faith spoliation? Yes, Your Honor. That's my understanding. The reason that that doesn't pose a problem on the jurisdictional front is that that is a, whether or not the claim succeeds on the merits is irrelevant. But basically there's no claim there because Arizona doesn't recognize that claim. There's no such claim under federal law. So that claim is to no avail. So if we sent this back, all the District Court could do is dismiss it. So doesn't that fall within a futility exception? That would, our argument would be that the District Court should dismiss it. But, again, that's, the point of our argument is to get finality on that issue. The District Court has never. Are we wasting our time? We're not wasting our time. We just keep jurisdiction, send it back for the meaningless paperwork, 12B6, the spoliation claim, and then we'll see this again in 30 days? I don't believe it would be a waste of time, Your Honor, but I do believe that's what should occur. As the Stevens Court, U.S. Supreme Court instructed in Stevens, dismissal is the only option if appellate jurisdiction is lacking. And though that may be the end. If you thought there was something to litigate about the spoliation claim, then the right thing to do would probably just let it be litigated. But if there's no such thing as a spoliation claim independent of the rest of the case, then there really isn't, is there? There is, Your Honor. There may not be. That would be our argument, that there is no cause of action recognized in Arizona. But, again, we don't have a final order from the District Court on that. We don't have any finding. There's been briefing on that issue, but there's simply nothing in the record to show that the District Court ever reached that conclusion. And one of the purposes or finality is to facilitate appellate review. And even though this Court, as it sits here today, may agree with that conclusion, the conclusion is not in the record. I can see in State Court you have a good-faith argument to extend the law. So even though up to this date Arizona hasn't recognized that tort, you still can go back and argue that they should. But the District Court, of course, has to just defer to whatever the State law is. I mean, we can know today, right, how the District Court would have to rule on that. Again, we can assume how the District Court would rule. We assume that the District Court would find that there's no basis to extend Arizona law to recognize that tort. But, again, we don't have that. We just don't have a finding to that effect. As to the wasting time issue, I believe what the Court could do is exactly what it did in the case cited at, this is in the Wolfe v. Bonko Nationale case, that this Court decided to cite at page 18 of the government's brief. In that case, what happened was there was a dismissal for lack of jurisdiction because there was no 54B certification, as in Chacon and as in this case. And what procedurally happened was the Ninth Circuit assigned the subsequent appeal from the final judgment, if there were any, to the same panel, so that the new issues did not have to be relitigated in front of a new panel. If the issues are the same, the Ninth Circuit in that case permitted the parties to either rely on the briefs or to seek supplemental briefing. And, again, I think that would be the perfect remedy in this case. Dismissal is the only option under the Stevens case, and I believe that what the Court set forth, what this Court set forth in the Wolfe case, would expedite any resolution of the subsequent appeal and would avoid a waste of judicial resources. One other point I wanted to make on a jurisdictional issue, this bad faith claim is actually a very substantive part of the allegations below. If you look at the 22-page second amended complaint, more than half, in fact 12 of those pages, are devoted entirely and exclusively to this bad faith claim. Although there may be some overlap with respect to being able to prove the discrimination and retaliation cause of action, this is, in fact, a separate cause of action that's been alleged. Specific relief has been sought. A declaratory judgment is sought on that cause of action. And it's a separate claim. It's a separate claim that's still pending there, and exactly as in the Chacon case. As I understand it, the basis for spoliation not being an independent tort in Arizona is Sousa. Is that correct? I don't know, Your Honor. I remember that it was briefed, but I do not remember. It looks to me like it's an Arizona Court of Appeals decision, but there's no Arizona Supreme Court decision yet. I don't recall. I do know that there. You don't know? I don't know. I do remember that there was Arizona case law that was cited in the briefing that stated that Arizona does not recognize a tort of spoliation. I do not remember whether it was the Court of Appeals or the Supreme Court. The Chacon case is virtually indistinguishable from this case. The Chacon case was an FTCA action that was brought against the government arising from an automobile accident between a Marine sergeant and the plaintiff. The original complaint asserted one cause of action. It was responding at superior liability cause of action against the government. The government moved for summary judgment. While that summary judgment motion was pending, the complaint was amended and added an entirely new cause of action for negligent entrustment. The government never amended its briefing to either address or attack this new cause of action, and the district court subsequently granted summary judgment on the original cause of action. Plaintiff appealed, and the Ninth Circuit dismissed that as a partial summary judgment order because it was focused solely upon the original complaint. Just as in Chacon, this bad faith spoliation cause of action is still pending, in fact, and could be revived at any point in time as part and parcel, to use the language of Chacon, to the plaintiff's case. As to the merits, plaintiff is simply not qualified for either of the positions that she applied for. Qualification is an absolute necessity. Your case looked pretty good on the computers. I'm not as sure on the personnel. Could you speak to that? Yes, Your Honor. Plaintiff offers two sources of experience as to why she's qualified for the human resources position. Let me back up just a little bit. That position was applied for the GS-11 slot. So in order to be qualified for that, plaintiff lacked the experience, or I'm sorry, lacked the education. She did not have a bachelor's degree. So the only way under the OPM regulations that she could have qualified for the GS-11 human resources position is through this one year of specialized experience, which must be attained at the next lower grade, which in this case would be a GS-9 level. Plaintiff offered two sources of experience as to how she met that GS-9 level. The first is her experience as a GS-9, as a vocational rehabilitation specialist. There are two problems with that. One is that experience deals with placing disabled patients. It does not deal with being a seasoned personnel specialist as is required by the OPM regulations. It doesn't provide substantive experience in federal personnel regulations, which is a requirement for the GS-11 position for which she applied. Secondly, the vocational rehabilitation specialist position is in a separate series, series 1715. The human resources management specialist position that she applied for is in series 201. It's a separate series. And under the operating manual and the OPM regulations, that experience in the GS-9 needs to be in the, quote, in the normal line of progression for that position. That's where I got lost on that. I didn't understand what the words meant, separate series, that sort of thing. My understanding is that it deals with each series is assigned a number. And, again, the vocational rehabilitation specialist series, if you look in the operating manual, this is page 58 through 60 of the supplemental excerpts. The vocational rehab specialist series is 1715. It's a separate numbered series. The human resources management specialist position is series 201. They're simply not in the normal line of progression. They're separate series. Oh, you mean it's two different ladders? Yes, Your Honor. Let me ask you if I might about the computer specialist position. I thought Mr. Ponce's declaration was carefully drafted to say she wasn't eligible for GS-9, but she was eligible for GS-5, and I think the person who was actually selected was also GS-5. So she was qualified for the job, she just wasn't for the nine. And she was, in fact, indicated to be qualified by the office that was reviewing her. So it seemed to me she met the minimum qualification, at least enough to pass summary judgment. Why wasn't that enough to show qualification? The reason that wasn't enough, Your Honor, is because she didn't apply to GS-5. She may well have been. In fact, the record shows the person who was selected didn't have GS-5 either. He said GS-7 or whatever it was. So, I mean, obviously he was considered for the job at that level and given a GS-5 or offered a GS-5. So why wasn't that equally applicable to Ms. Slaughter-Payne? The reason why it doesn't make any difference is because, again, McDonnell Douglas requires that you are qualified for the position for which you apply. But the person who was selected also applied for a higher level. That's true, Your Honor. So she was treated, she was met the qualifications to the same extent as the person who was ultimately selected did. Well, in terms of how she qualifies in the GS-5, 7, 9 ladder, that's true. But she did not have the same qualifications as the person who was selected. He had significantly more education. So that's a legitimate nondiscriminatory reason. And then was there evidence of pretext, I guess, or how did the State overcome that? Yeah, that would be, that's part of the pretext. That would go to the pretext issue, Your Honor. Because she certainly showed that she engaged in protected activity, union protests, other sorts of complaints. That's true, Your Honor. The record shows that. Why wasn't there enough to overcome summary judgment? As to the pretext? As to that claim for the computer specialist position. The reason why she couldn't overcome summary judgment is because she wasn't qualified for the position she applied for. She applied for the position at a 9 and only qualified at a 5. I don't understand why you're focusing on qualification, lack of prima facie case, rather than pretext. If the employer selects between two people, neither of them meets the paper qualification standard, he chooses one of them, then I don't think the other one has failed to establish a prima facie case on qualification. Rather, the evidence is that it was not a true minimum qualification at all. It was just a preference for that level of qualification. And since it's not a qualification for the job, you look to pretext. Perhaps I haven't been clear enough on that point, but we've actually put forth both arguments. We've argued first that she was not qualified. I thought you had in your brief, but this morning you're arguing prima facie case on qualification, and it looks like you don't make it if they chose somebody else who also lacked that qualification. That may well be. It's just a desideratum, not a qualification. That may be the end result. We've argued both in the briefing and today, but, again, we've focused on both, so I want to be clear. I thought you meant to give up the other one and just focus on qualification. We didn't intend to give up on that, but we do put forth both arguments, both in the briefing and today. Could you address her retaliation claim, assuming we got past jurisdiction? Again, she engaged in protected activity. She organized these protests. There was this protest in August 2001, and then she suffered an adverse employment action, she alleges, this series of invitations to her to leave her job. And then she brought forth, I guess, Mr. Brum's testimony as to why the department's explanation was pretextual. Can you address why that failed a summary judgment? Yes, Your Honor. The reason that failed a summary judgment is because none of those alleged actions were adverse. She alleges that she received a VSIP letter, a voluntary separation incentive payment letter, and a job offer for a GS-7. A job offer is not an adverse employment action. It didn't adversely affect her pay. It didn't affect her job. There was no change in duties or responsibilities. It was simply a job offer. Particularly when it's here, they're declined. When I look at the sequence of events, though, I mean, on August 31st, she has an informal protest. And then on September 20th, she's offered to be voluntary separation incentive. Six days later, she's offered a lateral transfer. And a few days, a couple weeks later, they announce a one-employee reduction in force. I mean, when you look at the Burlington Northern Standard for the type of pressure that an employer puts on an employee that would cause a reasonable employee not to engage in the protected action, it certainly seems taken together that there's enough. I assume that my answer to the question, Your Honor, as to the temporal proximity, that may be there. But one thing Burlington does require is an adverse employment action, and that simply isn't here. The reduction in force was never realized. Requests for approval to conduct the reduction in force was sought, but it was never obtained. The RIF never occurred. But doesn't Burlington Northern say it doesn't have to be final? I mean, that was a change that Burlington Northern made from our case law. My understanding is that it still requires an adverse employment action, and that Burlington, in fact, the language that I'm familiar with is that a reasonable person in the plaintiff's position would consider the action to be materially adverse, which means that it might have deterred a reasonable worker from making or supporting a charge of discrimination. So in any event, even under Burlington, we still need an adverse action, and we just don't have it. The requirement of the training plan was not adverse. That was something that was required because there were two other employees that did not have to do that, but they were at a lower grade level and they were just a temporary stopgap for that. And this is at supplemental excerpts volume two, pages 266 to 267. The logging in and out is another allegation of an adverse employment action that it was required of all employees and had been for quite some time. There's simply nothing in the causes of action that she set forth as alleged retaliatory actions that constitutes an adverse employment action.  Thank you, counsel. Thank you, Your Honor. Counsel, although you went through your time, go ahead and take 30 seconds for rebuttal if you need it. Your Honors, briefly a rebuttal. As for the administrative claim, we had a determination from the EO, ER00701, determining that Elizabeth Slaughter Payne had been discriminated, and the investigator, because of the amount of years that were going on, that investigator investigated the 22 separate claims, and that is in that report. And also the investigator determined that discrimination was based on retaliatory act of her talking to the employer about the eubonics letter that was read and regarding the letter that was put on her desk about keeping blacks in their place. Also, in the retaliation, quickly I want to discuss that what defense is discussing with you are what you put in on your complaint. What you can put on your complaint does not comply with the law of the Ninth Circuit. The Ninth Circuit asked us in Ravy Henderson to look at what was the results of the act. That's what you can't put on the complaint. The results of her act, she's removed from the bargaining unit. The results of her act, she can no longer represent black employees at the hospital. The results of her act, she can no longer do informal protests, and there has not been an informal protest done since she has left. You need to look at the results of the act. What they're looking at is what happened. Yes, she was only rifted. Well, that's not that. No. What is the result of their activities? She protests. They do something. She is no longer allowed to do any type of informal actions. She's not allowed to do any type of actions in support of formal protests. She's not allowed to represent people for EEO claims. She's no longer allowed to represent people in the union. All this has been taken away from her based on three formal protests where she marched around the building, an eubonics letter, and the fact that she contested a letter that stated keeping blacks in their place. Thank you, counsel. Slaughter Payne v. Peek is submitted.
judges: Goodwin, Kleinfeld, Ikuta